350

Argued October 30, 1972, affirmed February 1, 1973

# WILKINSON ET UX, *Appellants, v.* CUTSFORTH, *Respondent.*

505 P2d 913

*Ralph Currin,* Pendleton, argued the cause and filed a brief for appellants.

*Dennis D. Doherty,* Heppner, argued the cause for respondent. With him on the brief were Winter & Doherty and Herman W. Winter, Heppner.

DENECKE, J.

The trial court refused to grant specific performance of a land sale contract and plaintiffs appeal. We affirm.

Most of the facts are not in dispute. The defendant needed money and he negotiated to sell three of his ranches and some farm equipment to the plaintiffs. On October 15 the parties agreed.upon the terms of the sale and plaintiffs' lawyer drew up a contract which was never signed by defendant. The intention was that the contract was to be executed about December first, by which time plaintiffs would have borrowed $30,000, the down payment. On October 15, at defendant's request, plaintiffs delivered a check to defendant in the amount of $500 upon which plaintiffs wrote, "On pending contract for Cleveland, Kelly & Place + HD 11 & Dozer — 16 ft. plow — Sprinkler Equip." Defendant endorsed and cashed the check.

Plaintiffs took some of the equipment to their ranch. Later, the financier of plaintiffs' operation, whose approval was necessary to make the deal, informed plaintiffs it would not approve the bargain as proposed. It was uncertain from the financier's communication whether it would approve if the equipment was not purchased by plaintiffs. Plaintiffs brought the equipment back to defendant and told defendant about the financier's letter. Defendant understood the financier's communication to be that the financier would not approve and plaintiffs could not buy. He offered to give plaintiffs back their $500 but plaintiff testified he stated: "Well, we will see what PCA [the financier] says and if they agree, why, we will go ahead with it." Defendant, however, proceeded as if the sale could not be consummated and retained

a real estate broker who sold the property to a third party. Subsequently, plaintiffs obtained a loan for the amount of the down payment.

The parties regarded the issue to be whether the defendant's endorsement on the check constituted a note or memorandum "subscribed by the party to be charged" which, together with the unexecuted contract, would satisfy the Statute of Frauds, ORS 41.580. The defendant argues, among other things, that it does not because "no contract had been concluded."

■ We conclude that the plaintiffs cannot prevail, apart from any noncompliance with the Statute of Frauds. As an equity court sitting de novo, we find that the parties did not intend that a binding contract had been concluded.

Plaintiffs certainly did not intend to be bound until they had obtained a loan to pay the down payment. Defendant testified that he did agree to the terms of the contract, but we find his intention to be that if the parties subsequently were able to enter into a binding contract, he agreed to these particular terms. In addition, plaintiffs admitted that even as to the terms, defendant wanted to have his lawyer look over the contract and approve it before he signed. This was never done.

■ The making and accepting of the check is not inconsistent with our finding. The check was an advance on the payment plaintiffs were to make in the event the parties consummated the contract. If the contract did not become a reality, the money was to be returned.

This case is similar to *Britt v. Thorsen,* 258 Or 135, 137, 481 P2d 352 (1971). We found there that the parties agreed upon the terms of a settlement; how-

ever, they did not intend their agreement to be effective until a written agreement was signed. In the present case the parties did not intend their agreement to be effective at least until plaintiffs were assured of financing and defendant's attorney had approved the terms of the written contract.

Affirmed.